RECEIVED

MAR 1 6 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| Global Industries Offshore LLC | Civil Action No. 04-1249 |
| versus | Judge Tucker L. Melançon |
| Pipeliners Local, et al | Magistrate Judge Methvin |

## MEMORANDUM RULING

Before the Court are cross motions for summary judgment filed by the plaintiff, Global Industries Offshore LLC ("Global"), and by Pipeliners Local Union 798, Jimmy Dick, Karmen Mason, John Gregory, Corey Sharp, Charles Houston, Joel Evens, Ferrel Feagin, Billy Martel, Rusty Long, Allen Monic, Jason Rung, Josh Fontenot, Steve Hayes, Ricky Hayes, Kyle Zschiesche, David E. Hamilton, Jeremy Dunkin, Ken Kins, and Carmen Moody (collectively referred to as "the defendants"). For the following reasons, the motion for summary judgment filed by the defendants [Rec. Doc. 55] will be denied and the motion for partial summary judgment filed by Global Industries Offshore LLC [Rec. Doc. 66] will be granted in part and denied in part.

*Background*

Global entered into a contract with Williams Oil Gathering, L.L.C. in which Global was hired to lay approximately 90 miles of pipeline in the Gulf of Mexico, known as the Gunnison Project. Global used the derrick barge D/B HERCULES to lay the pipeline onto a portion of sea floor in the Outer Continental Shelf ("OCS"). The HERCULES was under a bare boat charter to Global and is a foreign flagged vessel sailing under the flag of the Republic of Vanuatu. The process involved

welding the individual pieces of pipe into one continuous pipeline as it was lowered into the Gulf of Mexico while the HERCULES was stationary with tension machines holding approximately 260,000 pounds of tension on the pipeline hanging off the back. This process occurred 24 hours a day, seven days a week.

Global hired C&G Welding, Inc. ("C&G") as a subcontractor to perform the welding aboard the HERCULES. Defendants Jimmy Dick, Karmen Mason, John Gregory, Corey Sharp, Charles Houston, Joel Evens, Ferrel Feagin, Billy Martel, Rusty Long, Allen Monic, Jason Rung, Josh Fontenot, Steve Hayes, Ricky Hayes, Kyle Zschiesche, David E. Hamilton and Jeremy Duncan were employees of C&G. Defendants Ken Kins and Carmen Moody were employees of Serimer Dasa, another subcontractor hired to service the welding equipment. Shortly into the process of installing the pipeline, on June 17, 2003, defendants Houston, Mason and Duncan delivered a letter to the Captain of the HERCULES, John Walsh, naming the Union as the bargaining representative of "the welders, helpers, spacers, and endprep operators currently working on the Gunnison Project for Global onboard the HERCULES" and demanded that Global meet with the Union to resolve certain issues by "Thursday, noon shift changes." The letter stated that the welding crew would "strike" if the demand was not met. Global did not meet with the Union representative to bargain over the terms and conditions of employment and on June 18, 2003, defendant Monic sent a letter to Global explaining the welders would strike at 6 p.m. that day. Thereafter, the defendants packed their belongings and met on the deck to be transported back to shore. The strike continued until June 27, 2003, when

the Union representatives sent a letter to Global requesting the "striking employees" be allowed to return to work.

Following the filing of several unfair labor practice charges with the National Labor Relations Board ("NLRB") against Global, the matter was investigated by the Regional office of the NLRB and a determination was made on April 29, 2004 stating that the NLRB did not have jurisdiction over the labor dispute on the HERCULES because the HERCULES was a foreign flag vessel. Plaintiff filed the instant action on June 9, 2004. Thereafter, on November 8, 2004, defendants' appeal of the NRLB ruling was denied

*Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56*. Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no

genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

*Analysis*

*A. National Labor Relations Act*

*1. Whether the HERCULES is subject to the OCSLA*

In their motion for summary judgment, defendants contend that the Outer Continental Shelf Lands Act ("OCSLA") applies to the actions during the time period that the HERCULES was installing pipeline on the Outer Continental Shelf ("OCS"). Defendants cite the 1978 amendments to the OCSLA in asserting their position that the OCSLA applies to pipe laying vessels that temporarily attach themselves to the sea floor in that the Act struck "fixed structures" from section 1333(a) and inserted "all installations and other devices permanently or temporarily attached to the seabed." Defendants also rely on *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492 (5th Cir. 2002) in further support of their position that the OCSLA applies to the HERCULES. In particular, defendants maintain that the court in *Demette* indicated that the fact that the HERCULES is a vessel does not take it outside the realm of the OCSLA because the HERCULES was "temporarily" attached to the seabed and its presence was to explore for, develop, or produce resources from the OCS. *Id.* at 497.

In their cross motion for summary judgment, plaintiff asserts that although movable drilling rigs and other similar structures which are considered vessels have been determined to be "points" within the United States for purposes of the OCSLA, the same is not true for "dynamically positioned vessels such as the HERCULES."

In support of its position, plaintiff cites the holding of the Department of the Treasury, Unites States Customs Service, that (1) dynamically positioned vessels operating on the OCS are not "points" as contemplated by the OCSLA because such vessels do not have a permanent or temporary attachment to the seabed, *Customs Ruling Letters 115823, dated 10/28/02; 109576, dated 07/12/88; 113838, dated 02/25/97*, and that (2) vessels used solely for pipe laying purposes and not for the purpose of "exploring for, developing, or producing resources" from the OCS are not considered "attached" to the seabed under the OCSLA. *Customs Ruling Letters 115823, dated 10/28/02; 111126, dated 10/16/90.*

Plaintiff argues that defendants have failed to cite any court decisions or other authority in which the OCSLA was found to apply to a dynamically positioned pipe laying vessel such as the HERCULES. Rather, plaintiff argues, defendants rely on cases involving permanent drilling platforms or other rigs that are clearly "attached" as required by the OCSLA. Plaintiff cites the deposition of its barge superintendent, James Singley, to explain that the HERCULES positions itself utilizing a "dynamic positioning system" which does not utilize a traditional anchor system. Depo. of Singley, p. 22. Plaintiff further argues that defendants' reliance on the Fifth Circuit's decision in *Demette* is misplaced as that case dealt with whether the OCSLA applied to a jack-up rig that was positioned over the OCS.

Finally, plaintiff argues that defendants cannot rely on the 1978 amendments to the OCSLA, sections 1333(d) and 1356(a)(3). Plaintiff contends that nothing in the language in the legislative history or in the text of section 1333(d) would render

the National Labor Relations Act ("NLRA") applicable to a foreign flag vessel such as the HERCULES as section 1333(d) is limited to the applicability of lighting and warning device requirements to vessels operating on the OCS. Plaintiff also argues that section 1356(a)(3) is "a narrowly tailored provision in the OCSLA which was enacted to protect United States' jobs on the OCS and ensure the safe manning and navigation of vessels operating on the OCS" and was not intended to apply to United States owned foreign-flags vessels.

The OCSLA, enacted in 1953, separately addresses what legal jurisdiction applies to certain structures and installations on the Outer Continental Shelf and what type of compensation is due workers injured as a result of operations on the outer Continental Shelf. *See* 43 U.S.C. § 1333. 43 U.S.C. § 1333(a)(1) provides:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices <u>permanently or temporarily attached to the seabed, which may be erected thereon</u> <u>for the purpose of exploring for, developing, or producing resources therefrom</u>, or any such installation or other device (<u>other than a ship or vessel</u>) for the purpose of transporting such resources, to the same extent as if the Outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter. (Emphasis added).

While section 1333(a)(1) states that vessels are not subject to the OCSLA, the Fifth Circuit has held that a vessel which is "permanently or temporarily attached to the seabed ... for the purpose of exploring for, developing, or producing resources

therefrom" is subject to the OCSLA, pursuant to this section. In the instant case, the record indicates and defendants do not dispute, that the HERCULES did not utilize a traditional anchor system but rather positioned itself using a "dynamic positioning system." *Depo. of Singley.* Defendants confirm that the HERCULES was attached to the seabed via a "suction pile." Although defendants have cited no jurisprudence involving a dynamically positioned vessel such as the HERCULES, they argue that in *Demette* the Fifth Circuit "stated that similar vessels fall within the scope of the OCSLA when they are 'temporarily' attached to the seabed." Defendants' reliance on *Demette*, however, is misplaced. In *Demette*, the Fifth Circuit held that movable drilling rigs and other structures which are temporarily attached to the seabed fall within the scope of the OCSLA. Nor did the *Demette* court consider a vessel such as the HERCULES which was involved in pipe laying rather than exploration, development or production of resources. In that regard, defendants contend that the HERCULES was more akin to a structure because once the pipelaying began its range of motion was extremely limited. While the Court is unaware of jurisprudence determinative of whether the activity of pipelaying is considered "exploration, development or production of resources," it is aware of cases which refer to a pipelaying barge and a dynamically positioned barge involved in pipelaying as a "vessel." *See i.e., Torch, Inc. v. Alesich,* 148 F.3d 424, (5th Cir. 1998); *Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.,* 79 F.3d 480 5th Cir. 1996).

The record includes several Ruling Letters from the Department of the Treasury, United States Customs Service[1], which provide that "dynamically positioned vessels" operating on the OCS which are used for pipe laying purposes and not for the purpose of "exploring for, developing, or producing resources" do not fall under the provisions of the OCSLA. *Customs Ruling Letters*. In particular, Customs Ruling Letter number 109576, dated July 12, 1988, provides that, "the vessel in question would not be tethered or anchored in any way to the seabed of the outer Continental Shelf. Neither would the diving bell come into contact with the seabed, or engage in any extraction, exploration, or production operations. Accordingly, the vessel does not become a point on the outer Continental Shelf to which the coastwise laws are extended by the OCSLA...." While defendants argue that Customs rulings are inapplicable in this case, given the lack of jurisprudence in this area, the Customs rulings provide the Court with some guidance. *See U.S. v. Mead Corp.*, 533 U.S. 218, 233 (2001)("[A]n agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires.") (citations omitted). Accordingly, based on the lack of jurisprudence and authority to support defendants' position, and considering the Customs rulings as guidance, the Court finds that the provisions of the OCSLA did not apply to the actions in question during the time period that the HERCULES was installing

---

[1] The rulings from the Department of the Treasury, Customs Service, are in the scope of that agency's jurisdiction over coastwise trade issues.

pipeline on the Outer Continental Shelf, and thus, the NLRA was not applicable under that reasoning. Thus, defendants' motion for summary judgment as to this issue will be denied and plaintiff's motion will be granted.

*2. Whether or Not the HERCULES Was a Foreign Flag Vessel*

Defendants assert that the even if the OCSLA did not apply to the HERCULES, the NLRA still applies because the HERCULES is not a foreign flag vessel. Rather, defendants argue, the foreign flag flown by the HERCULES, that of Vanuatu, is merely a "flag of convenience." Plaintiff argues that the HERCULES is flagged under the laws of the Republic of Vanuatu, which has not adopted the NLRA. Plaintiff asserts that whether the Vanuatu flag is one of convenience is not an issue in this case as the courts have already determined when (and to what extent) United States laws apply to such vessels.

In *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10 (1963) the Supreme Court held that the jurisdictional provisions of the National Labor Relations Act do not extend to maritime operations of foreign flagships employing alien seamen, and hence the National Labor Relations Board was without jurisdiction to order a representation election on registered vessels of a Honduran corporation. Further, in *United Ass'n of Journeymen and Apprentices of Plumbing and PipeUnited Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry, AFL-CIO v. Reno*, 73 F.3d 1134 (D.C. Cir. 1996),the court held that the OCSLA did not apply under general extension of United States law to foreign flag vessels operating on the outer Continental Shelf.

Defendants contend that the lack of tangible connections with Vanuatu make this case distinguishable from the holding in *McCulloch* in that "the HERCULES was owned and operated by an American corporation, staffed with American workers, and with no connection to Vanautu." Defendants further contend that the *McCulloch* Court noted that "Congress has constitutional power to apply the National Labor Relations Act to the crews working foreign-flag ships, at least while they are in American waters, [the question is] whether Congress exercised that power. *Id.* at 17(citations omitted). The Court found that 'nothing in the language or the legislative history of the 1959 amendments to the Act clearly indicates a congressional intent to apply the Act to foreign-flag ships and their crews.' *Id.* at 21."

Defendants maintain that section 1333(a) of the OCSLA specifically states that the Constitution and laws of the United States apply to vessels such as the HERCULES. Defendants cite *Spector v. Norwegian Cruise Line Ltd.*, 125 S.Ct. 2169 (2005) in support of their position that the NLRA is applicable to the HERCULES. In *Spector*, the Supreme Court held that certain U.S. statutes, including the Americans with Disabilities Act, are applicable to foreign cruise ships except in cases where applying the statute would interfere with a ship's internal affairs. In such a case, a clear statement of congressional intent would be required to apply the statute. *Id.* at 2177("[a]bsent a clear statement of congressional intent, general statutes may not apply to foreign-flag vessels insofar as they regulated matters that involve only the internal order and discipline of the vessel, rather than the peace of the port.").

The record provides that the National Labor Relations Board made a determination on April 29, 2004 stating that it did not have jurisdiction over the labor dispute on the HERCULES because the HERCULES was a foreign flag vessel. Defendants have failed to site jurisprudence which disputes the NLRB determination as to the HERCULES. Nor have defendants established the existence of a clear statement of congressional intent such that the NLRA, a law which pertains to the internal affairs of a vessel, should apply to the HERCULES. Accordingly, the Court finds that the NLRA does not apply to the HERCULES. As such, defendants' motion for summary judgment on this issue will be denied and plaintiff's motion will be granted.

### B. Plaintiff's Claims

Plaintiff alleges defendants are liable under the following claims: (1) intentional interference with contractual or business relations; (2) intentional acts under the General Maritime Law; and (3) mutiny. As to all causes of action, plaintiff asserts that defendants used the strike to intentionally cause the Gunnison Project to slow down to a "trickle," causing a seven-figure loss, such that Global would be placed in such financial straights that it would have no choice but to accede to defendants' demands for recognition of the Union as a bargaining agent.

Defendants argue that the individual defendants who participated in the strike aboard the HERCULES did not engage in any actions which were improper or which were aimed at interfering with Global's contract. Rather, defendants argue, the

welders aboard the HERCULES acted conceitedly to affect their terms and conditions of employment while on the barge.

The record before the Court indicates that the parties have each submitted different versions of the relevant facts. A case in such a posture is not properly disposed of by summary judgment. A motion for summary judgment can only be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material facts it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991). Accordingly, as to the issue of liability, the motion for summary judgment filed by defendants and the motion for summary judgment filled by plaintiff will be denied.

*Conclusion*

As the Court finds that the NLRA was not applicable to the incidents at issue on the HERCULES, a foreign flag vessel laying pipe on the outer Continental Shelf, defendants' motion for summary judgment will be denied and plaintiff's motion for summary judgment will be granted as to that issue. Because there exist genuine issues of material fact related to whether or not plaintiff has an action against the defendants based on defendants' actions aboard the HERCULES, defendants' motion for summary judgment and plaintiff's motion for summary judgment will be denied in that respect.

COPY SENT:
DATE: 3-16-06
BY: ___
TO: JLM